UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRIX MORENO MONTECASTRO,<br><br>  Plaintiff,<br><br>  v.<br><br>NEWSOM, *et al.*,<br><br>  Defendants. | Case No.: 1:20-cv-00689-SAB (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT<br><br>[ECF No. 1] |

Plaintiff Hendrix Moreno Montecastro is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's complaint, filed May 18, 2020.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.[1]

Over the course of the past two decades a history of serious danger, overcrowding, and an excessive increase in violence has emerged in the State of California Prisons.  A large part of this epidemic is prisoner double bunking which is the primary source of all obstacles that manifest through overcrowding living conditions, such as: (1) treacherous living conditions as imminent danger (from overcrowding), as inmates beat, attack and even kill each other living space; (2) noise levels so profound that inmates consider committing suicide, fight, riot, attack, and suffer mental infliction; (3) double bunking inmates, creates invasions of space, constant disturbance, shaking, movements that

---

[1] On May 18, 2020, the Court severed Plaintiff's complaint from that of fellow inmate Paul Adams who filed the action jointly.  Therefore, the Court has limited the allegations to those relevant and specific to Plaintiff only.

trigger hostility, anger, fights, riots, attacks, suicide, killings, and murders.  It is also mental, emotional, stress and anxiety, profound depression and psychological pain and suffering for long periods of time; (4) double bunking inmates is the sole reason for prison and jail overcrowding.  In fact the State of California are overcrowded based on double bunking inmates vertically; (5) double bunking manifests overcrowding, which in turn creates lack of adequate medical care and mental health for prison inmates due to the sheer volume of population, where under qualified medical staff cannot meet the medical and mental health needs of the whole population; (6) double bunking of inmates creates unsafe living conditions, where prison order cannot be maintained by the correctional officers in California.  Because of the overcrowding, officials rely on having "shot caller" inmates regulate other inmates for disciplinary purposes, such as beating inmates, attacking inmates, bullying inmates, using duress and fear, murder and killings; and (7) double bunking inmates in California creates overcrowding and causes a serious and significant increase in violence.

Prison inmates, mainly lifer and long sentence inmates, are more prone to violence and are the ones that mostly trigger major fights, attacks, riots and manifest a dangerous atmosphere for the entire population.

One of the main points in inmate to inmate violence is directly related to top bunk inmates that get up and down the bunk constantly, shaking the bunk (waking up bottom bunk inmate) movements that disturbs the inmate on the bottom, moving and shaking the bunk from the top, that causes coffee, food and things to drop and spill.  This frustrates inmates because it is never ending.  It also causes lack of living space, where two inmates occupy the same space at the same time, this is the number one cause of violence.

Inmates on the top bunks tend to get up and down a lot, they jump down for food, water, to use the restroom, to look in their lockers, to move around, and the nonstop movement that overwhelms the bottom bunk inmate.

The top bunks are hazardous because there are no ladders to climb up the bunk.  There are no adequate handholds or rails to grip for going up and jumping down from the top bunk.  The only way inmates can get up a bunk is to step on a small foot hold on the end of the bunk which is slippery and small and for only one foot.  Another way is to stand on top of the bottom bunk and climb up that way.

Inmate wars result from standing on the bottom bunk. While the inmate is trying to get on the top bunk, the bunk is shaking, moving, and creates a frustration to the inmate on the bottom. When the top bunk inmate jumps down (all inmates must leap-jump off the top bunk, that is the only way down), which creates a loud sound and annoys the bottom bunk inmate and surrounding inmates. This process is every single day, all day and night.

While the top bunk inmate tries to get down, there are no hand-rails, handholds, ladder or foothold that can be reached. To get down the inmate must fully commit to the jump and hope he lands right or he suffers injury. Eighty percent of inmates report they had a top bunk injury.

Over seventy-five percent of the inmate population has made medical requests for bottom bunk chronos due to injuries or problems getting up and down the top bunk. Seventy-five percent of the above inmates are systematically denied bottom bunk chronos who are forced despite their problem or medical injuries. The denials are systematic because of overcrowding and there are not enough bottom bunks.

Jumping down from a bunk can and usually does cause medical problems to the bones, feet, hips, knees, ankles, and back. Because of the process of getting up and down the top bunks without handholds inmates also suffer injuries to their hands, elbows, and shoulders, especially inmates over the age of 40.

Governor Newsom and Diaz have a practice of clearing the top bunks of an institution, and shifting inmates from prison to prison or suspend in transit while the federal court special master performs population counts, counting only the inmates on bottom bunks, because the top bunk inmates are shifted or suspended. After the count is performed, the inmates are then immediately filled back into the top bunks, while the next prison for inspection does the same.

It is evidenced by the California Department of Corrections and Rehabilitation (CDCR) policy to clear the top bunks for inspections and counts, that top bunk inmates are the cause of overcrowding and CDCR and Governor Newsom realize it and that is why they shift and suspend only top bunk inmates.

On August 30, 2018, all the top bunks were vacant at the California Correctional Institution, and the population was approximately 400 inmates. There was no violence, overcrowding or

problems related to any of the above issues, including better medical care and treatment. The officers were telling inmates: "DON'T GET USED TO THIS KIND OF LIVING, SOON EVERYBODY WILL BE BACK, AFTER THE FEDS DO THEIR COUNT, ALL THE TOP BUNKS WILL BE FILLED." Upon hearing the news that the top bunks would all be filed, inmates were complaining, stressing and having anxiety about who would be their cellmate. When the inmate top bunks were filled, the violence, harassment, excessive force, fights, attacks, assaults and inadequate medical care all returned.

Medical facilities at all prisons are underqualified and lack adequate credentials to treat and diagnose most inmates medical conditions. Over seventy percent of the inmate population is denied adequate medical care. Inmates with known medical conditions are denied bottom bunk chronos even if necessary, because CDCR informed medical to top the bottom bunk chronos because there is not enough bunks. Thereby, medical providers ignore the medical needs of thousands of inmates that need bottom bunk status, and are forced to live on top bunks causing pain and suffering.

Inmates in hallways, outside, in cells, in dorms, or anywhere in the facility are excessively loud. When inmates are crowded together, they must speak louder over the other inmates because the noise levels are so high. The officers scream for silence which never works.

There is an underground policy because of the double bunking overcrowding in which officers use excessive force, fear, duress, threats, physical abuse, assault and violence as discipline. Officers will ransack inmates property to pay for the mishap of another inmate which causes innocent inmates to lose property and suffer punishment for someone else's problems.

Because of double bunk overcrowding, CDCR classification committees deny programs to thousands of inmates that are required to participate in specific programs by the Board of Parole Hearings (BPH). Based on overcrowding it takes months and even years to get into rehabilitative programs to comply with the BPH demands for early release on parole.

Plaintiff seeks declaratory relief and a permanent injunction abolishing all top bunks in the entire State of California.

///

///

## III.

## DISCUSSION

### A.     Overcrowding-Double Bunking

Plaintiff contends that double bunking creates unconstitutional crowding in violation of the Eighth Amendment.

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). However, the Eighth Amendment does not "mandate comfortable prisons" that are "free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. The Eighth Amendment does proscribe the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." Gregg v. Georgia, 428 U.S. 153, 173, 183 (1976). This includes not only physical torture, but any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted).

To prevail on an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under the objective requirement, the prison official's acts or omissions must be objectively, sufficiently serious and result in the denial of the minimal civilized measure of life's necessities. Id. (internal citations and quotations omitted). In this regard, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Id. at 832 (internal quotations and citations omitted).

Under the subjective component, a prison official must have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. "[T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" exists when a prison official "knows of and disregards

an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Conversely, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.  In addition, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

In Rhodes v. Chapman, 452 U.S. 337, 348 (1981), the Supreme Court held that double-celling prison inmates is not a violation of the Eighth Amendment. The inmates in Rhodes v. Chapman filed suit seeking an injunction because "double celling confined cellmates too closely" and caused overcrowding of the prison. Id. at 340. Based on "extensive findings of fact" in the record, the Supreme Court concluded that double celling of inmates did not lead to conditions that violated the Eighth Amendment, such as the unnecessary infliction of pain; a deprivation of "essential food, medical care, or sanitation;" or the creation of "other conditions intolerable for prison confinement." Id. at 348-350.

As an initial matter, the Court notes that the existence of orders to reduce prison overcrowding does not give rise to a claim, as overcrowding, by itself, is not a constitutional violation. Doty v. County of Lassen, 37 F.3d 540, 545 n.1 (9th Cir. 1994); Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982). Moreover, Plaintiff can only litigate this action on his own behalf, as he lacks standing to assert the constitutional rights of others. See Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir.1982) (stating that a party must assert his own rights, not those of third parties) (citing Duke Power Co. v. Carolina Envtl Study Group, 438 U.S. 59, 80 (1978) ); Warth v. Seldin, 422 U.S. 490, 499 (1974) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action....' ").

Furthermore, allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment. See Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 471 (9th Cir. 1989); see also Rhodes v. Chapman, 452 U.S. at 348-49 (double-celling of inmates by itself does not inflict

1  unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth
2  Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has
3  caused an increase in violence, has reduced the provision of other constitutionally required services, or
4  has reached a level rendering the institution no longer fit for human habitation. See Balla, 869 F.2d at
5  471; Hoptowit v. Ray, 682 F.2d at 1248-49 (noting that overcrowding itself not Eighth Amendment
6  violation but can lead to specific effects that might violate Constitution), abrogated in part on other
7  grounds by Sandin v. Conner, 515 U.S. 472 (1995).

8        Plaintiff has failed to allege particularized injuries allegedly stemming from overcrowding, and
9  his allegations about the overcrowding itself are conclusory and insufficient to state a claim. See, e.g.,
10 Akao v. Shimoda, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district
11 court's dismissal of claim that overcrowding caused increased stress, tension, and communicable
12 disease among inmate population); Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984)
13 (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions
14 causing increased violence, tension, and psychiatric problems).  Specifically, although Plaintiff
15 contends that Governor Newsom and Diaz have a practice of clearing the top bunks of an institution,
16 and shifting inmates from prison to prison or suspend in transit while the federal court special master
17 performs population counts, he fails to state any particularized allegations about how the prison's
18 overcrowding has had a specific impact on him.  Indeed, Plaintiff does not explain whether he was in a
19 cell that was over capacity or was deprived of any services because of overcrowding.  Therefore, his
20 overcrowding claim fails. See Balla, 869 F.2d at 471; Rounds v. Woodford, No. CIV S-05-0555 GEB
21 GGH P., 2009 WL 1657462, at *2-3 (E.D. Cal. June 12, 2009) (finding that plaintiff failed to "plead
22 specific facts demonstrating that overcrowding has caused him to be exposed to unhygienic
23 conditions" and that allegations that overcrowding made him feel "stress, tension, and unsafe" were
24 insufficient "for the court to reasonably infer that defendant is liable"); Valdespino v. Brewer, No. CV
25 13-01528-PHX-DGC (MEA), 2014 WL 1875120, at *5 (D. Ariz. May 9, 2014) (finding that plaintiff
26 did not state overcrowding claim when he "fail[ed] to assert approximately when and for how long he
27 was subjected to overcrowded and understaffed conditions"); see also Latimer v. Kolender, No.
28

05cv2090 JM(JMA)., 2008 WL 2326305, at *5 (S.D. Cal. June 3, 2008) (noting that "[g]eneralized conclusory allegations of overcrowding ... are insufficient to state a claim").

Nor are Plaintiff's allegations sufficient to indicate that prison officials ignored an obvious risk to his health or safety or that prison officials had knowledge of a substantial risk to plaintiff's health or safety but failed to take reasonable measures to protect plaintiff. In other words, Plaintiff's mere reference to prior incidents of violence in prison is not enough to support an Eighth Amendment claim.

Lastly, to the extent Plaintiff contends that Defendants have failed to remedy overcrowding pursuant to remedial orders issued in the class actions Armstrong and Plata, his claim fails. See Brown v. Plata, 563 U.S. 493 (2011); Armstrong v. Davis, 58 Fed. App'x 695 (9th Cir. 2003). The remedial decrees do not create independent causes of action. "[R]emedial orders ... do not create 'rights, privileges or immunities secured by the Constitution and the laws' of the United States." Hart v. Cambra, No. C-96-0924-SI, 1997 WL 564059, *5 (N.D. Cal. Aug. 22, 1997) (quoting Green v. McKaskle, 788 F.2d 1116, 1123–24 (5th Cir. 1986) ). Thus, Plaintiff is not entitled to relief for the alleged violation of Plata. Further, this Court cannot issue relief to Plaintiff under Armstrong. "[A]ny violations of the remedial plan developed in Armstrong do not provide an independent basis for relief in this court. Violations of the Armstrong Remedial Plan must be addressed *through the procedures provided by that plan.*" Prado v. Swarthout, No. 2:15-cv-1866-WBS-DS-P, 2017 WL 1106007, *10 n.1 (E.D. Cal. Mar. 24, 2017) (emphasis added); see also Crayton v. Terhune, No. C 98-4386-CRB-PR, 2002 WL 31093590, at *4 (N.D. Cal. Sept. 17, 2002). Any alleged violations of the Remedial Plan must be addressed through the procedures provided in Armstrong. See Frost v. Symington, 197 F.3d 348, 358–59 (9th Cir. 1999). Accordingly, Plaintiff also fails to state claim based on the Armstrong remedial decree regarding prison overcrowding.

**B.    Inadequate Medical Treatment**

Plaintiff also attributes a lack of medical care and treatment to the overcrowding of the prisons. However, Plaintiff's allegations are conclusory in nature. For instance, Plaintiff alleges "that double bunking inmates manifests a overcrowding crisis, and because of the overcrowding of inmates and lack of adequate medical resources due to the large amount of inmates that resources are exhausted,

creating inadequate medical care and mental health is inadequate also." (Compl. at 15.)  Plaintiff further alleges that "[i]nmates with known medical conditions are denied bottom bunk chronos even were [sic] it is necessary, because CDCR informed medical to stop the bottom bunk chronos because there is not enough bottom bunks."  (Id.)  However, Plaintiff fails to allege or demonstrate specific facts as to how the overcrowding by double bunking has led to the lack of medical care for him.  More importantly, Plaintiff has failed to show that any prison official disregarded an excessive risk to his health and/or safety by double bunking.  Simply stated, Plaintiff does not connect the overcrowding to the failure to provide medical care.  Plaintiff's conclusory statements that overcrowding results in deficiencies in health care are insufficient. In addition, Plaintiff failed to plead that a policy or action on the part of CDCR in response to crowding resulted in deliberate indifference.  Accordingly, Plaintiff fails to state a cognizable claim for deliberate indifference to a serious medical need.

### C. Excessive Noise

To the extent Plaintiff is seeking to state a claim based upon the alleged excessive noise due to double bunking, Plaintiff fails to state a cognizable claim.

The Ninth Circuit has held that public conceptions of decency inherent in the Eighth Amendment require that inmates be housed in an environment that, if not quiet, is at least reasonable free of excessive noise.  Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996), amended 135 F.3d 1318 (quoting Toussaint v. McCarthy, 597 F.Supp. 1388, 1397, 1410 (N.D. Cal. 1984), aff'd in part, rev'd in part on other grounds, 801 F.2d 1080, 1110 (9th Cir. 1986).

However, for excessive noise to be cognizable under the Eighth Amendment, "it 'must either significantly exceed, or be independent of, the inherent discomforts of confinement.' " Endsley v. Luna, 750 F. Supp. 2d 1074, 1100 (C.D. Cal. 2010) (quoting Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004)).  Here, Plaintiff has not present specific factual allegations to find that the noise level is "excessive."  Plaintiff has only broadly alleged "[i]nmates in hall ways, outside, in the cells, in the dorms, or anywhere inmates are allowed to be, are excessively loud, such much [sic] that inmates compete for noise levels[.]"  (Compl. at 17.) Plaintiff has not stated how often the noise occurred, nor that it is constant, or the specific impact it has caused on him.  Thus, the Court cannot find that the noise is "excessive" and therefore, Plaintiff has not alleged the noise level violates his constitutional

rights. Keenan v. Hall, 83 F.3d at 1091.  In sum, Plaintiff has not presented sufficient facts to support his assertion that the noise levels constitute punishment, therefore Plaintiff has not sufficiently stated an Eighth Amendment violation.

**D.     Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Although Plaintiff contends that he was retaliated against, he has failed to demonstrate a "but-for" causal nexus between the alleged retaliation and any constitutionally protected activity. Accordingly, Plaintiff fails to state a cognizable retaliation claim.

**E.     Injunctive Relief**

As to Plaintiff's request for the statewide prevention of double bunking, Plaintiff lacks standing to seek such relief on behalf of other prisoners.  Mayweathers v. Hickman, No. 05cv713 WQH (CAB), 2008 WL 4206822, at *8 (S.D. Cal. May 16, 2008); see, e.g., Spencer v. Hernandez, No. 08-CV-0416-JM (JMA), 2009 WL 331007, at *8 (S.D. Cal. Feb. 9, 2009) (finding that the inmate plaintiff lacked standing to seek an injunction ordering that cameras be installed "anywhere a corrections officer might be able to 'hurt someone' ").  Accordingly, the Court finds that Plaintiff fails to show that he would be entitled to injunctive relief even if he had asserted a viable cause of action.

**F.      Declaratory Relief**

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any Defendant violated Plaintiff's constitutional rights is unnecessary.

**IV.**

**CONCLUSION AND ORDER**

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).  Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an

        amended complaint;

3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: __August 25, 2020__

                                      UNITED STATES MAGISTRATE JUDGE